DECISION AND JUDGMENT ENTRY
{¶ 1} Plaintiffs-Appellants, Mark Wilson and Teresa Wilson, husband and wife, and their son, John Travis Wilson, appeal from the decision of the Lawrence County Court of Common Pleas granting summary judgment in favor of Defendants-Appellees, Dale Brown, Thelma Brown individually and Thelma Brown as executrix of Dale Brown's estate. Appellants contend genuine issues of material fact remain as to whether Appellees are bound to specifically perform on an agreement for the sale of Appellees' farm. Because any interest in the property Dale Brown had power to convey reverted to Thelma Brown upon his death, and because *Page 2 
Thelma Brown was not a party to any agreement with Appellants, we disagree. Appellants' assignment of error is overruled.
 I. Facts {¶ 2} Dale Brown and his wife Thelma, as joint tenants with right of survivorship, owned and worked a farm of approximately 120 acres. Due to advancing age, Mr. Brown decided to make inquiries into selling the property. Knowing that Appellants might be interested in purchasing the farm, Mr. Brown approached them in early 2005. After Appellants looked over the property, Mr. Brown verbally informed them that he would be willing to sell it for $210,000 if they could secure a loan.
 {¶ 3} Appellants visited the farm four or five additional times and had further discussions with Mr. Brown regarding the potential sale. During these discussions, Mr. Brown told Appellants he was worried about the tax consequences of selling his cattle and proposed selling the property for $240,000, in which case the cattle would come with the farm. During these discussions, Mr. Brown also showed Appellants the deeds to the property. The deeds showed the property was owned by Mr. Brown and his wife, Thelma, as joint tenants with right of survivorship. Appellants admit they knew the property was owned jointly by Mr. And Mrs. Brown. *Page 3 
 {¶ 4} Appellants sought financing for the potential purchase of Appellees farm. Their bank informed them that, before Appellants could secure a loan, the bank required a written brief description of the property and a price from the property owner. As a result of the bank's request, Appellants prepared two statements regarding the sale. The typed statements, in their entirety, read as follows: "March 21, 2005, I Dale Brown agree to sell John Wilson and Mark Wilson approximately 120 acres of land which includes a house, two barns, one shed and several outbuildings for $_________." Following the statement were spaces for Name, Address and Phone. On one of the two statements, the dollar amount, hand written in by Appellants, was $240,000. On the other statement, the dollar amount was $210,000. Otherwise, the two statements were identical. Appellants told Mr. Brown that, in order for them to secure financing, the bank required a statement from him.
 {¶ 5} On March 21, 2005, Appellants brought the two statements to Mr. Brown. Mr. Brown filled in his address and phone number and signed both statements. Appellants Mark Wilson and John Wilson then signed both statements in the area below Mr. Brown's phone number. Thelma Brown was present, but was not asked to sign, and did not sign, either statement. *Page 4 
 {¶ 6} Following March 21, Appellants took certain actions regarding the property. They arranged financing with their bank. They arranged for two surveys of the property. Appellants bought fertilizer for the property and assisted Dale Brown in applying it on the farm. Appellants arranged for various inspections which were paid for by Brown. Appellants took some of Brown's cattle to market on his behalf. Appellants also harvested hay from the property, and placed it in barns located therein, on Brown's behalf.
 {¶ 7} Sometime in May or June of 2005, Mr. Brown spoke to an attorney about the potential tax consequences of selling the property. When he understood how much he would have to pay in taxes, Mr. Brown decided he could not afford to sell the farm to Appellants and informed them of his decision. On March 3, 2006, Appellants filed a complaint against Dale and Thelma Brown seeking specific performance on the alleged contract signed by Mr. Brown on March 21, 2005. On March 22, 2006, several weeks after Appellants filed the complaint, Dale Brown died.
 {¶ 8} In January of 2007, Thelma Brown filed a motion for summary judgment. In March of 2007, Appellants filed a memo contra and an amended complaint acknowledging the death of Dale Brown and naming Thelma Brown, both individually and in her capacity as executor, as *Page 5 
defendants. Upon order of the trial court, Thelma Brown, as executor of the estate of Dale Brown, was substituted for Dale Brown as a party in the case. After considering Appellants' memo contra and holding a hearing on the matter, the trial court granted Appellees' motion for summary judgment. Appellants then filed the current appeal challenging the trial court's decision.
 II. Assignment of Error {¶ 9} THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS BY GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT.
 {¶ 10} In their sole assignment of error, Appellants contend the trial court erred in granting the motion for summary judgment. Appellants argue the two documents signed by Appellants and Dale Brown on March 21, 2005, constituted a valid and binding contract for the purchase of real estate and, because genuine issues of material fact remain to be decided on the issue, summary judgment was inappropriate.
 III. Standard of Review {¶ 11} When reviewing a trial court's decision regarding a motion for summary judgment, appellate courts must conduct a de novo review.Doe v. Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-186, 738 NE.2d 1243;Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336, *Page 6 
671 NE.2d 241. As such, an appellate court reviews the trial court's decision independently and without deference to the trial court's determination.Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711,622 N.E.2d 1153.
 {¶ 12} A trial court may grant a motion for summary judgment only when: 1) the moving party demonstrates there is no genuine issue of material fact; 2) the moving party is entitled to judgment as a matter of law; and 3) reasonable minds can come to only one conclusion and that conclusion is adverse to the opposing party. Civ.R. 56; see, also,Bostic v. Connor (1988), 37 Ohio St.3d 144, 146; Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 13} "[T]he moving party bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case. To accomplish this, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) * * *. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292,1996-Ohio-107, 662 N.E.2d 264. These materials include "the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any." Id. at 293; quoting *Page 7 
Civ.R. 56(C). If the party moving for summary judgment fails to satisfy this initial burden, the motion must be denied. Dresher at 294.
 IV. Legal Analysis {¶ 14} In the case sub judice, Appellants contend that, by signing the statements on March 21, 2005, regarding the sale of the property, Dale Brown entered into a binding, express contract for the sale of land. We begin our analysis of this argument in light of R.C. 5302.20.
 {¶ 15} R.C. 5302.20(B) states, in pertinent part: "If two or more persons hold an interest in the title to real property as survivorship tenants, each survivorship tenant holds an equal share of the title during their joint lives unless otherwise provided in the instrument creating the survivorship tenancy. Upon the death of any of them, the title of the decedent vests proportionately in the surviving tenants as survivorship tenants. This is the case until only one survivorship tenant remains alive, at which time the survivor is fully vested with title to the real property as the sole title holder." Further, under R.C. 5302.20(C)(2): "A conveyance from any survivorship tenant, or from any number of survivorship tenants that is from less than all of them, to a person who is not a survivorship tenant vests the title of the grantor or grantors in the grantee, conditioned on the survivorship of the grantor or grantors of the conveyance, and does not alter the interest in the *Page 8 
title of any of the other survivorship tenants who do not join in the conveyance." Thus, in a joint tenancy with right of survivorship, one joint tenant can not unilaterally terminate the survivorship rights of another joint tenant. See Spitz v. Rapport (1992), 78 Ohio App.3d 330,604 N.E.2d 801; Murphy v. Murphy (1991), 77 Ohio App.3d 573,602 N.E.2d 1216.
 {¶ 16} It is undisputed that Dale and Thelma Brown owned the property as joint tenants with right of survivorship. Therefore, any interest in the property that Dale Brown had power to convey would revert to Thelma Brown upon his death. It is also undisputed that Thelma Brown was not a signatory to the documents in question regarding the sale of the property. Accordingly, even if those documents, signed only by Dale Brown, could be construed as an express, binding contract, any interest they might have conveyed were extinguished upon Dale Brown's death. As such, in order to prevail in their suit for specific performance, Appellants must be able to demonstrate the existence of a contract between themselves and Thelma Brown.
 {¶ 17} Appellants contend that, even though Thelma Brown did not sign the agreements in question, she is still bound by them. We address this argument in the context of Ohio's statute of frauds. "No action shall be brought * * * upon a contract or sale of lands * * * or interest in or *Page 9 
concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized." R.C. 1335.05. The statue of frauds requires a signature because "[a] signed writing provides greater assurance that the parties and the public can reliably know when such a transaction occurs. It supports the public policy favoring clarity in determining real estate interests and discourages indefinite or fraudulent claims about such interests." Stickney v. Tullis-Vermillion,165 Ohio App.3d 480, 2006-Ohio-842, 847 N.E.2d 29, at ¶ 23, quoting North Coast Cookies,Inc. v. Sweet Temptations, Inc. (1984), 16 Ohio App.3d 342, 16 OBR 391,476 N.E.2d 388.
 {¶ 18} Appellants argue that, though Thelma Brown did not sign the documents as required by the statute of frauds, the doctrine of part performance entitles them to specific performance on the alleged contract. Appellants are correct in that, in certain instances, when parties have partially or completely performed on an oral agreement to transfer real estate, courts may enforce the agreement though it fails to meet the written signature requirement of the statute of frauds.Dinunzio v. Murray, 11th Dist. No. 2003-L-213, 2005-Ohio-4047, at ¶ 25. However, in the case at bar, there is no evidence that Thelma Brown entered into such an express oral *Page 10 
agreement with Appellants. Despite this fact, Appellants assert that because she was fully aware of the agreement to sell the property and present when Dale Brown actually signed the documents, she implicitly assented to the agreement and is bound by it. In similar circumstances, we have held otherwise.
 {¶ 19} In Living Waters Fellowship v. Ross, 4th Dist. No. 00 CA 2714, 2000-Ohio-1973, the plaintiff sued for specific performance on a purported contract for the sale of the defendants' property. The defendants were husband and wife, and though there was evidence that the wife had entered into an agreement with the plaintiff, the husband had not. We stated "[i]t is evident that if more than two (2) persons are intended to be parties to a proposed contract, the contract does not come into existence unless all of them manifest their assent. (Internal citation omitted.) There is simply no evidence in this case that [the husband] assented to the sale of his interest in the warehouse building and, thus, [the plaintiff] is not entitled to the conveyance of that property." Id. at *5. Because the defendants admitted that the husband generally left his business decisions up to his wife, the plaintiff argued that the husband should be bound by his wife's contract. We disagreed, stating: " * * * [T]he general decision to leave one's business affairs `up to' one's spouse is not the same as manifesting an assent to the *Page 11 
sale of real property. There must be some express indication (e.g. a power of attorney) that [the wife] possessed the authority to bind her husband to a sales contract for this real property." Id.
 {¶ 20} In the case sub judice, Dale Brown was the only signatory to the agreement. Thelma Brown neither signed nor orally entered into an agreement with Appellants. Further, there is no evidence that Dale Brown had express authority, such as power of attorney, to bind Thelma to the agreement. As such, even if the agreement between Dale Brown and Appellants could be construed as a binding contract, Thelma Brown was not a party to such agreement and can not be compelled to abide by its terms. Accordingly, Appellants' assignment of error is overruled.
 V. Conclusion {¶ 21} After reviewing the record, we find there are no genuine issues of material fact concerning any essential element of Appellants' case, that Appellees are entitled to judgment as a matter of law and that reasonable minds can only come to one conclusion on the matter. Because Dale and Thelma Brown owned the property as joint tenants with right of survivorship, any interest in the property Dale Brown, individually, had the power to convey to third parties reverted to Thelma Brown upon his death. Further, Thelma Brown was not a party to any agreement between Dale *Page 12 
Brown and Appellants. Accordingly, whether or not the agreement between Dale Brown and Appellants constituted a valid contract, she can not be bound by the agreement's terms. Appellants' assignment of error is overruled and the decision of trial court is affirmed.
JUDGMENT AFFIRMED.